UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH JAY JOHANNESSEN,<br><br>Plaintiff,<br><br>v.<br><br>JUUL LABS, INC.; DOES 1-25, inclusive,<br><br>Defendants. | Case No. 3:23-cv-03681-JD<br><br>**ORDER RE ARBITRATION AND SEALING** |

Plaintiff Elizabeth Jay Johannessen sued defendants JUUL Labs, Inc. (JUUL) and unnamed Does for violations of the California Fair Employment and Housing Act, Cal. Gov. Code. § 12940, *et seq.*, and the California Family Rights Act, Cal. Gov. Code § 12945, *et seq.* Dkt. No. 1-2. Johannessen says that she experienced gender discrimination, retaliation, and harassment, and was denied accommodations for her medical disabilities, while working at JUUL.

Johannessen filed suit in the Superior Court for the City and County of San Francisco, and JUUL removed to this Court on traditional diversity grounds. Dkt. No. 1. Johannessen did not object to removal. JUUL now asks to send the case to arbitration, Dkt. No. 5, which Johannessen opposes, Dkt. No. 15. Arbitration is ordered.

**BACKGROUND**

As alleged in the complaint, Johannessen worked as JUUL's Senior Director of Compliance from March 12, 2018, to May 22, 2020, when she was fired. Dkt. No. 1-2 ¶¶ 26, 28. Johannessen's employment agreement, which JUUL submitted with the motion to compel arbitration, contains an agreement to arbitrate any "claim, controversy or legal dispute between . . . you and the Company." Dkt. No. 15-1 at ECF p. 6. The agreement states that it is governed by

1  the Federal Arbitration Act and "to the extent not inconsistent with or preempted by the Federal
2  Arbitration Act, the Arbitration Rules set forth in California Code of Civil Procedure Section 1280
3  et seq." *Id.*  Rather atypically, the arbitration clause does not delegate questions of arbitrability,
4  validity, and the like, to an arbitrator.  Consequently, the Court will decide those issues as
5  germane to JUUL's motion.

6        Before reaching the merits, a misstep by the parties needs correction.  This Court, and all
7  courts of the United States, do business under the strong presumption of the public's right of
8  access to all proceedings.  *In re Google Play Store Antitrust Litig.*, 556 F. Supp. 3d 1106 (N.D.
9  Cal. 2021).  This presumption may be overcome only upon a showing of compelling
10 circumstances.  *Id.*  Neither side respected these principles, and filed redacted documents,
11 including the employment agreement in question here, without requesting a sealing order, or
12 obtaining the Court's consent.  *See* Dkt. Nos. 5-1 (JUUL contract version), 15-1 (Johannessen
13 version).  The parties are advised that any future filings that do not comport with the Local Rules
14 and the Court's standing orders will be summarily stricken from the docket.

15 ## LEGAL STANDARDS

16       The Court has detailed the standards governing a motion to compel arbitration under the
17 FAA in several prior orders, which are incorporated here.  *See Blackstock v. Marin Luxury Cars*
18 *LLC*, No. 22-cv-07052-JD, 2023 WL 5959426, at *1 (N.D. Cal. Sept. 12, 2023); *Williams v. Eaze*
19 *Sols., Inc.*, 417 F. Supp. 3d 1233 (N.D. Cal. 2019).  In pertinent part, the Court's role under
20 Section 4 of the FAA "is limited to determining whether a valid arbitration agreement exists and,
21 if so, whether the agreement encompasses the dispute at issue." *Cornet v. Twitter, Inc.*, No. 22-cv-
22 06857-JD, 2023 WL 187498, at *1 (N.D. Cal. Jan. 13, 2023) (quoting *Lifescan, Inc. v. Premier*
23 *Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004)).  "If the party seeking to compel
24 arbitration establishes both factors, the district court 'must order the parties to proceed to
25 arbitration only in accordance with the terms of their agreement.'" *Id.* (quoting *Lifescan*, 363 F.3d
26 at 1012).  The validity and scope of an agreement to arbitrate are determined by the Court unless
27 the parties clearly provide that those questions will be determined by the arbitrator.  *Id.* at *2
28 (citing *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013)).

## DISCUSSION

### I. ENFORCEABILITY AND UNCONSCIONABILITY

Well-established principles foreclose Johannessen's objections of enforceability and unconscionability. To start, there is no disagreement that Johannessen signed an offer letter on February 2, 2018, that featured the arbitration agreement. Her opposition brief forthrightly acknowledges this fact. Dkt. No. 15 at 1 ("She executed the document as requested on February 2, 2018."). Johannessen criticizes JUUL for not providing a complete and unredacted set of her employment-related agreements in its motion papers, but that does not change the salient fact that she signed an agreement with an arbitration clause. Johannessen herself provided the relevant documents, albeit redacted improperly, and so there is no problem with going forward on the record before the Court. Johannessen also chides JUUL for not specifying which rules would apply in arbitration, but the arbitration agreement clearly states that California Code of Civil Procedure Section 1280, *et seq.*, applies.

Johannessen's unconscionability contentions are not well taken. An arbitration agreement will be set aside only if it is procedurally and substantively unconscionable. *Blackstock*, 2023 WL 5959426, at *2 (citing *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021)). Johannessen says the arbitration agreement is adhesive and unfair. Dkt. No. 15 at 9-10. These concerns have been definitively rejected as reasons to deny arbitration. All arbitration agreements, which allow for very limited or no negotiation, will always have some degree of procedural unconscionability. *OTO L.L.C. v. Kho*, 8 Cal. 5th 111, 126 (2019). Consequently, "offering arbitration and other terms on a take-it-or-leave-it basis is not enough to find an agreement to arbitrate unenforceable." *Alonso v. AuPairCare, Inc.*, No. 3:18-cv-00970-JD, 2018 WL 4027834, at *3 (N.D. Cal. Aug. 23, 2018) (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 915 (2015)).

Johannessen's rather convoluted theory about an Invention Assignment Agreement that accompanied her offer letter does not change this conclusion. Johannessen says the Invention Assignment Agreement conflicts with the employment agreement, resulting in an arbitration agreement "riddled with confusion and secrecy" and presented in a "misleading and obfuscating

3

manner." Dkt. No. 15 at 10-11. The plain language of the documents demonstrates otherwise. The Invention Assignment requires all disputes arising out of that agreement -- namely, intellectual property disputes -- to be litigated in California state and federal courts. Dkt. No. 15-1 at ECF p. 11. The employment agreement separately provides that all disputes between the employee and the Company "arising out of [Johannessen's] employment or termination" must be submitted to binding arbitration. *Id.* at ECF p. 6. The agreements are directed toward different types of disputes and are not in conflict.

It bears mention that Johannessen, an experienced attorney, was better situated than most prospective employees to manage concerns of procedural unconscionability. She successfully negotiated an agreement for an annual salary of $235,000, a target bonus of 30%, and additional equity compensation and benefits, *id.* at ECF pp. 4-5. These favorable terms, coupled with her professional experience, underscore that she "knowingly entered into a contract containing an arbitration provision in exchange for a generous compensation and benefits package." *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 981 (2010).

Overall, Johannessen has not established any material issues of procedural unconscionability. That effectively ends the unconscionability inquiry, but the Court notes that her showing of substantive unconscionability is equally light. Johannessen says that the arbitration agreement is substantively unconscionable because it requires employees to arbitrate employment claims against JUUL while JUUL may litigate in court intellectual property against employees. Dkt. No. 15 at 12-13 (citing *Chun Ping Turng v. Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610, 628-29 (N.D. Cal. 2019)).

It is true that unfairly one-sided agreements may be substantively unconscionable where the weaker party is forced into arbitration, and the party with greater bargaining power is not. *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702 (2004). But an employer need only demonstrate that the agreement contains a "modicum of bilaterality" or that there is a reasonable justification for the agreement's ostensible one-sidedness, based on business realities. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 117 (2000).

4

1    That is the case here.  The arbitration agreement requires employees and JUUL to arbitrate
2    employment claims, so there is no disparity there.  For the IP claim carve-out, JUUL says that IP
3    disputes often implicate the rights of third parties and are consequently better suited to judicial
4    forums.  *See* Dkt. No. 16 at 8.  JUUL also says that these disputes often arise after the employer-
5    employee relationship has terminated.  *Id.*  These explanations are reasonable.  The IP carve-out
6    does not make the arbitration agreement "so one-sided as to shock the conscience." *Ingle v.*
7    *Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003) (quoting *Kinney v. United*
8    *HealthCare Servs., Inc.*, 70 Cal. App. 4th 1332, 1330 (1999)).

## II.   NULLIFICATION

Paragraph 14 of the Invention Assignment Agreement, which Johannessen signed on the same day as her employment contract, states that it is "the entire agreement and understanding between the parties as to the subject matter herein and supersedes all prior or contemporaneous agreements whether written and oral."  Dkt. No. 15-1 at ECF p. 11.  Johannessen suggests that this language abrogated her employment agreement and nullified the arbitration provision.

Not so.  Paragraph 14 plainly limits the scope of the clause to the "subject matter herein" of the Invention Assignment Agreement.  Similarly, paragraph 15 of the Invention Assignment Agreement limits in-court litigation to disputes "arising out of or relating to this Agreement."  *Id.*  Neither provision supports the conclusion that the Invention Assignment Agreement effectively ripped up Johannessen's employment contract with JUUL.

## III.   THE ENDING FORCED ARBITRATION OF SEXUAL ASSAULT AND SEXUAL HARASSMENT ACT OF 2021 (EFAA)

The EFAA amended the FAA to render pre-dispute arbitration agreements unenforceable with respect to workplace sexual assault and sexual harassment claims.  It was enacted in March 2022, and applies to any "dispute or claim that arises or accrues on or after" its enactment.  Pub. L. No. 117-90, 136 Stat. 26 (2022) (codified at 9 U.S.C. §§ 401, 402) (EFAA).  Johannessen says the EFAA retroactively applies to the claims in the case, and so renders the arbitration agreement unenforceable.

The question of the possible application of the EFAA here came up in prior briefing on arbitration. The Court could not readily ascertain which, if any, of Johannessen's claims might be covered by the EFAA. *See* Dkt. No. 23. At the Court's direction, the parties filed statements in answer to that inquiry. *See* Dkt. Nos. 24, 25.

The complaint uses the word "harassment," but not as that term is to be understood for purposes of the EFAA. The EFAA defines a sexual harassment dispute to "mean[] a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401. Johannessen alleged a claim under the California FEHA, which defines "harassment because of sex" as "sexual harassment, gender harassment, and harassment based on pregnancy, childbirth, or related medical conditions." Cal. Gov't Code § 12940(j)(4)(C). The California Civil Rights Council, the agency tasked with interpreting and effectuating the purpose of the FEHA, 2 Cal. Code. Regs. § 11004, has defined harassment as:

> (A) Verbal harassment, e.g., epithets, derogatory comments or slurs on a basis enumerated in the Act;
> (B) Physical harassment, e.g., assault, impeding or blocking movement, or any physical interference with normal work or movement, when directed at an individual on a basis enumerated in the Act;
> (C) Visual forms of harassment, e.g., derogatory posters, cartoons, or drawings on a basis enumerated in the Act; or
> (D) Sexual favors, e.g., unwanted sexual advances, which condition an employment benefit upon an exchange of sexual favors.

2 Cal. Code Regs. § 11019(2). California state courts have construed the FEHA's "prohibition against sexual harassment" to "include[] protection from a broad arrange of conduct, ranging from expressly or impliedly conditioning employment benefits on submission to or tolerance of unwelcome sexual advances, to the creation of a work environment that is hostile or abusive on the basis of sex." *Lewis v. City of Benicia*, 224 Cal. App. 4th 1519, 1524 (2014).

The critical point for present purposes is that sexual harassment and sexual discrimination are not the same under the FEHA. They "appear in separate provisions and define distinct wrongs." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 705 (2009). "[C]laims for sexual discrimination and sexual harassent are distinct causes of action, each arising from different provisions of the FEHA." *Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 460 n.5 (2005).

1   Discrimination and harassment claims may on occasion "overlap as an evidentiary matter." *Roby*,
2   47 Cal. 4th at 709.  But "discrimination refers to bias in the exercise of official actions on behalf
3   of the employer, and harassment refers to bias that is expressed or communicated through
4   interpersonal relations in the workplace." *Id.* at 707.

5         Nothing in the complaint plausibly alleges sexual harassment as contemplated by the
6   FEHA.  The complaint does not allege that Johannessen was subjected to unwelcome sexual
7   advances or experienced "epithets, derogatory comments or slurs" on the basis of her gender or
8   pregnancy.  2 Cal. Code Regs. § 11019(2).  It does not allege physical or visual harassment of a
9   sexual nature.  *Id.*  The FEHA harassment claim is based solely on the allegations that
10  Johannessen's job duties were changed adversely after she returned to work from maternity leave;
11  she was not included in some meetings; one of her direct reports was reassigned to a different
12  manager; and she was provided with a lactation room with inadequate privacy, including "no lock
13  on the door."  Dkt. No. 1-2 ¶¶ 43-52.  These incidents plausibly allege discrimination or gender
14  bias by the employer for pleading purposes, but not sexual harassment in interpersonal
15  relationships at work.  Personnel actions such as "hiring and firing, job or project assignments, . . .
16  the assignment or nonassignment of supervisory functions, deciding who will and who will not
17  attend meetings, . . . and the like, do not come within the meaning of harassment." *Janken v. GM*
18  *Hughes Elecs.*, 46 Cal. App. 4th 55, 64-65 (1996).

19        The EFAA does not apply in the absence of a plausible sexual harassment claim.  Other
20  courts have reached the same conclusion.  *See, e.g., Yost v. Everyrealm, Inc.*, 675 F. Supp. 3d 563,
21  585 (S.D.N.Y. 2023) (declining to apply EFAA where plaintiff did not allege plausible sexual
22  harassment claim).  To read the EFAA more broadly, as Johannessen urges, would violate the
23  plain meaning of the statute, and lead to an improper dilution of the "liberal federal policy
24  favoring arbitration." *AT&T Mobility LLC v. Conception*, 563 U.S. 333, 339 (2011).

25        **CONCLUSION**

26        Johannessen's claims will go to arbitration.  The case is stayed pending further order.  The
27  parties are directed to jointly file status reports every 90 days, starting on September 6, 2024.
28  Each side will file unredacted versions of all ECF documents filed to date, or bring a sealing

1  request that conforms to the District's Local Rules and the Court's sealing practices, by July 12,
2  2024.

3  **IT IS SO ORDERED.**

4  Dated:  June 24, 2024

JAMES DONATO
United States District Judge